May it please the court, my name is George Harides, appearing on behalf of the petitioner Jarnail Singh in his appeal of the immigration judge's decision, Anna Ho of Seattle, Washington, who denied his applications for asylum and withholding. The Board of Immigration Appeals affirmed the immigration judge's opinion without opinion, and thus the IJA's decision is a final agency determination in this case. The threshold issue in this case is credibility. The petitioner argues that the immigration judge erred when she, for a myriad of reasons, in a myriad of ways erred when she based an adverse credibility finding on what she referred to as inconsistencies between the petitioner's testimony and the statements he allegedly made at his asylum office interview. The petitioner challenges her finding on this issue for three reasons. First, I would like to refer the court to page 124 of the administrative record, where at a master calendar hearing, the immigration judge mischaracterizes the significance of the referral notice. She states, and I quote, she refers to the referral notice as a denial of a petitioner's case, which is improper when one reads the referral notice on page 179 of the record, which states in bold, this is not a denial of your asylum application, and which also says later on in that same paragraph, the determinations that we have made in referring your application are not binding on the immigration judge, who will evaluate your claim anew. The immigration judge fails to recognize that it's a de novo proceeding, and in fact says to the petitioner's trial counsel at the hearing, so I presume, Ms. Puttar, and I quote, so I presume, Ms. Puttar, you're going to ask the court to review the denial. Is that what you intend to do? This shows that the immigration judge at the very outset of the hearing mischaracterized the significance of the referral notice. And then Petitioner secondly would like to point out that from reading the record, there's no indication that the referral notice was ever properly admitted into evidence. The immigration judge refers to it as being admitted as Exhibit 4, yet it was not properly admitted into evidence, not allowing Petitioner's counsel to object to it being admitted or to object to the amount of weight it should be accorded. This is significant because this Court has established that an adverse probability finding where the immigration judge surprises the asylum applicant is improper in certain situations. So was the asylum interview record, which is actually unusually detailed, was it referred to at all before the IJ hearing? Was it what, Your Honor? Was it referred to at all during the IJ hearing? Only in the master calendar, Your Honor. But not at the actual adjudicatory hearing. I do not believe so, Your Honor. And it's only referred to in our decision as well, which was entered after the hearing. It was mailed to Petitioner's counsel at the time. It's significant because an adverse probability finding that is issued without notice to the asylum applicant is improper in certain situations. And Petitioner requests that, submits that this is one of those situations because, as I mentioned, there was no opportunity to object to it being admitted or to argue as to how much weight it should be accorded. Or to discuss its accuracy. That is correct, Your Honor. There was no testimony by the person who wrote this note. That's my third point, Your Honor, that the immigration judge's adverse probability finding based on this factor is undermined by the fact that there was no cross-examination available of the asylum officer and there was no indication the asylum officer was available or not available for a cross-examination. Also, more significantly, the Petitioner himself was not questioned as to this document, was not impeached as far as his testimony regarding the dates of his arrest, and was not given an opportunity to admit or deny making those statements. And I would like to also move on, because I see I'm running out of time, to the other factors the immigration judge used to deny his claim. The immigration judge issued an adverse probability finding based on alleged inconsistencies. Can we just stop for a minute back to the asylum interview? Yes, Your Honor. In the end, in any event, the asserted contradiction was primarily some dates. Is that right? I believe on two out of the four dates, the second being an alleged discrepancy of three months, the second one being an alleged discrepancy of one month. And the Petitioner would argue that had he been able to testify as to those alleged inconsistencies, he would have been able to either categorically deny making those statements or would have at least been able to give an explanation as to why he might have testified in that regard. But the record is completely silent on his explanation. Okay, go ahead. Which also undermines the adverse credibility finding on that issue. The immigration judge also cited alleged inconsistencies between Petitioner's testimony and his father's affidavit. The only one that Petitioner was confronted with on the record was with regards to his participation in the boycott effort. Petitioner testified on page – well, in detail on page 155 through 157 in the record. And he – and I quote him in response to the question, how did you participate in the boycott? He says, well, actually I gave them 20,000 rupees to help the people boycott that. And then he later says he also encouraged people to boycott the election. The immigration judge felt that his testimony that he participated in the boycott was inconsistent with his father's affidavit, which also said he participated in the boycott because Petitioner later testified that he was incarcerated at the time of the election that was boycotted. Petitioner submits that a reasonable fact finder would not find an inconsistency there because a boycott is a process. It's a protest. It's like an election campaign. And as such, one can participate leading up to the election date, and that should be construed as participation. Here he testified unequivocally and with sufficient detail and consistently that he participated in the boycott. And in the context of his testimony, it's clear that he participated before the actual election. And the fact that he was incarcerated for his participation also should be construed as participation. To construe it as otherwise would be tantamount to saying that somebody is not participating in a civil rights movement if they're in jail at the time that it's ongoing, where they have been arrested because of some of the protests that they may have participated in. Petitioner also points out that the immigration judge erred when she claimed that there was an inconsistency between his testimony and his father's affidavit regarding his last arrest. His father's affidavit states that he was placed in, I think the quote is, and that he was beaten in January of 1994. But that petitioner testified that he was beaten in December of 1993 and then placed into custody and placed in terrible conditions in January of 1994. So petitioner argues that that's not a significant inconsistency. And it's also not a significant inconsistency with regards to the last issue that the I.J. cited regarding allegedly, well, not allegedly, but omitted testimony, petitioner's omitted testimony regarding his first arrest, that there were these false charges of spousal abuse that the police issued against him as a pretense for arresting him and the fact that his father promised that he would not, that the petitioner would not associate with the CalStan movement upon his release. Well, as for the latter, petitioner may or may not have been aware that his father made that promise to the police. He was not a recipient witness. He was never confronted with whether or not, at his hearing, with whether or not he was ever, whether he had knowledge that his father made that promise. And as far as the spousal abuse charge, petitioner submits that this is a detail that he omitted. There's no issue in this case that he did not satisfy his burden of proof if his testimony is credible. And moreover, he was not confronted with that issue either at his hearing. So in summary, before I defer to the response counsel, we have a record here that's first insufficient to justify an adverse credibility finding. We have, I allege, due process violations here. And in the alternative, we do not have material inconsistencies justifying adverse credibility finding. Thank you very much. I defer the rest of my time. Thank you. May it please the Court. Dimple Gupta, representing the Respondent, Attorney General John Ashcroft. Your Honor, first of all, the issue the petitioner raises today, that the asylum officer's interview report was not properly submitted into the record, has never been introduced before. This is the first time the petitioner raises this argument. The petitioner did not object during the asylum hearing before the IJ. Was it? But it never came up during the asylum hearing. Well, when the IJ did mark it as an exhibit, that would have been the appropriate time to do so. And the petitioner was represented by counsel. Also, if you look at the petitioner's brief to the BIA. But the fact that the document is admitted for the fact that it happened is a different thing than admitting it for the hearsay of what was said and answered during the interview. And that was never discussed at the IJ level, so there was no opportunity to object to it. Right? But once the IJ issued her opinion and the petitioner filed his brief before the BIA, he then had the opportunity to raise this issue. The petitioner never raised this issue before the BIA. Didn't he raise the issue then? He hadn't had an opportunity to answer with respect to the asserted inconsistencies? Your Honor, the issue the petitioner raised in his brief to the BIA was that the IJ had the burden to inform the petitioner what discrepancies he deemed material and give him an opportunity to respond. He did not argue that the asylum officer's interview, that report, was improperly submitted. That's a different argument. He never raised the discrepancies. It was improperly submitted for the fact that there had been a denial of or a referral. Right? And for that purpose, there was no problem with it. The question is whether the information in it could be used to implicate his credibility. But that's not the issue the petitioner raised in his brief to the BIA. That's also fine cut. I don't think so, Your Honor. When the petitioner says any time the immigration judge raised the inconsistencies. If both had been used at the hearing, then there would have been an opportunity to object, because it wasn't used at the hearing. The information was not used at the hearing. There was no opportunity to object. So how could he be faulted for not objecting? Even if you say that he didn't have the responsibility to object when it was admitted as an exhibit into the record, which he knew then that I.J. could rely upon. Well, no, that's what I'm saying. I don't know why or where you're getting that connection. The immigration judge did ask the petitioner and Petitioner's Counsel at the beginning, you do affirm that the testimony you're giving now is accurate, and if it is inconsistent with any other testimony given in the past that can be used against him, the immigration judge specifically stated that. But even if you don't accept that argument about objecting at the I.J. hearing, the petitioner had their duty to bring it up in his BIA brief. I submit saying that the I.J. didn't specifically question him about every inconsistency she found material is not the same as saying that that asylum interview was false. All right. So what about the fact that she didn't question him about any of the inconsistencies he had? Well, Your Honor, that's simply not true. If we look at the third arrest, or the petitioner's account of his third arrest, what we have is the I-589 he filled out, he stated that the police arrested him and his brother in January of 1992. And then they held him until after the February 1992 boycott. He submits that the entire reason he was arrested and held was that he could not participate in this boycott. If you go to page 154 of the administrative record, in 155, you see that the I.J. specifically questions the petitioner about this. He – she said – Now, I'm asking specifically, did he question him about the asserted inconsistencies during the asylum interview? In other words, my understanding is that there was not an inconsistency with regard to dates for what he said at the test – the dates of his arrest. But there was – at the asylum interview, the asylum interviewer said during the asylum interview he was inconsistent about dates. And the I.J. later relied on that, not on something that happened at the hearing, but on the asylum interviewer's finding about the asylum interview. Am I wrong about that? Your Honor, the I.J. did question him about dates in this excerpt. Did he question him about the asserted conflict during the asylum interview? No, Your Honor. I don't think the I.J. specifically flagged that. And he did rely on that, right? He relied on the fact that during the asylum interview, he assertedly contradicted himself. Your Honor, that is one of the grounds that the immigration judge did rely upon. But that's only one of the grounds. If we look at the third arrest, the immigration judge also based her finding that the petitioner isn't credible based on his testimony at the I.J. hearing versus what he submitted in his application. And the father's declaration. The father's declaration says that, yes, his son's actively engaged in the boycott movement. In his I-589, he said that, no, he had not. At the I.J. hearing, first the petitioner said, yes, he did participate in the boycott. That's at page 154 of the administrative record. It was only after the immigration judge flagged the issue and said, wait, earlier you testified that you had not participated in the boycott. And now you're testifying that you did participate in the boycott. Which is it? Did the petitioner then again change his testimony and say he did not participate? Based on this, the I.J. could find him not credible that he participated whether he participated or not in the boycott and undermine his testimony. And, Your Honor, both the petitioner and his attorney were there. Neither one of them offered the explanation then that they offered in their BIA brief and to this court now. So to fault the I.J. for not relying upon it, I don't think is sincere. Additionally, the State Department has specifically indicated that this event, this specific event, the February 1992 boycott, is such a fundamental event in Sikh politics that any Sikh applying for political asylum based on political activity would remember the date of the event and would have participated or would have remembered if they had participated. And the State Department warns that any petitioner who can't. What event are you talking about? It's at page 193 of the administrative record. It's the 1996 country report of the State Department. The State Department specifically says, quote, Sikhs strongly favoring an independent Sikh state or engaged in Punjabi politics would be very knowledgeable about the aborted June election and the subsequent election boycott and would have participated in these campaigns. On the same page. He did participate in the campaigns. But he says that he was in prison during the actual election. He says that now, not before the I.J. Also, the State Department goes on to say, citing the date of one of these events, quote, is an indication that either the applicant was not involved in the preparation of his I-589 and, therefore, the material has been primarily fabricated by a preparer or that the applicant was not involved in Punjabi politics. Your Honor, I submit that this argument that the petitioner raises today has never been submitted before, has never been submitted properly. You can't find the words you processed anywhere in his BIA brief or the brief to this court. Not in regard to this asylum application. The whole reason he's making this argument now is because if you look at his declaration. It's not the asylum application, as I understand. It's the asylum interview. Oh, I'm sorry. It's the asylum interview. You're right, Your Honor. The whole reason he's making this argument now is if you look at his declaration in the asylum application, it is very detailed about all of his political activities, about these two events, the June 1991 election and the February 1992 boycott. Yet when he sat down with the asylum officer, he couldn't remember any of his political activities. The asylum officer repeatedly said to him, could you tell me about any of your political activities? He didn't mention the June 1991 election. He didn't mention the February 1992 boycott. He didn't even mention the name of the Akali Dalman party, which apparently he was willing to jeopardize his life for. He didn't mention anything. None of this was brought out of the IJ hearing, right? Your Honor, I don't think that's true. The fact of it, nothing that he said at the asylum interview or didn't say at the asylum interview was he questioning about? Your Honor, the purpose of the IJ hearing, the due process, is to give the Petitioner an opportunity to meet his burden of proof, and it is his burden of proof, to submit what evidence he would like to submit. There is no right to cross-examination by the IJ that I know of that's been recognized by the BIA or this Court. He had every opportunity. He had seen this declaration. He had seen the asylum officer's report. He had every opportunity to address those inconsistencies. I submit the only reason he's raising it for the first time before this Court today is because he knows that if this Court were to look at his declaration and at I-589 and the asylum officer's report, there's no way to square the two. When he met with the asylum officer, Your Honors, he could not even remember if he had been beaten, detained, mistreated by the police. He couldn't recount a single incident. And the asylum officer repeatedly asked him, just tell me about any harassment that happened to you. None of this is credible. Was the hearing before the IJ a de novo hearing? Before the IJ? Yes. Yes, Your Honor. And the way you're arguing, it's not a de novo hearing. He has an obligation to disprove everything that the – No, Your Honor. The IJ specifically said to him, I'm going – what you're saying to me today is that I'm going to hold you to the truth, correct? And he said, correct. He said, because if it contradicts anything else in the record or any of your prior testimony, I am going to hold it against you in a credibility finding. And the Petitioner and his counsel acceded to that. We have a transcript of this interview. We have an account by a person who wasn't at the hearing about what was said at the interview. Your Honor, he has never denied what happened at the hearing. All he would have to do is deny it. He never had an opportunity because nobody ever asked him what had happened. Your Honor, he had the opportunity in his brief to the BIA. He had an opportunity in the brief to this Court. He had the opportunity – I'm sorry. What good does it do to contest something that – when you don't have a – when you are not making a factual record? But, Your Honor, this is the first time he's raising this argument. Again, if you look at his testimony to the BIA – I'm sorry. It's not the first time. You told me that he raised to the BIA the fact that he wasn't confronted with any of the discrepancies. No, he raised to the BIA the fact that the IJ – and he specifically said if the IJ was going to hold these contradictions against him, the IJ should have specifically brought them out and said – And that's exactly the issue that I'm raising. No. Now what he is raising is the IJ has an obligation to first ask him, is it – are all of these things in the exhibits, in the records, things you've seen before and have notice of, are they accurate? He knew that it was being submitted and the IJ flagged that she would be relying upon him. That is enough notice at the IJ hearing for him to then object and then to say something. To hold otherwise is to reward him for not bringing this issue before the IJ, before the BIA, or at the 11th hour before this Court, simply because he knows that he is entirely not credible when you compare the two. You're over your time. I appreciate your argument. It was helpful. Thank you. Are you aware of the recent case of Chan v. Ashcroft in which they imposed an obligation on the IJ to let the individual know what the credibility findings are going to be, where there's a streamlining case, when the BIA – Your Honor, that case, as I understand it, holds only when the IJ issues her opinion. She needs to make sure she specifically lists, this is why I found you not credible, and gives some examples. Before that problem, the IJs were simply saying, not credible, case over. And the problem was that that left no way for the BIA or this Court to review the IJ's finding. As a matter of administrative law, that's not proper. Here the IJ did. She identified material discrepancies in every single one of the Petitioner's claims to persecution, and she set them forth and, I submit, gave the Petitioner notice of them, too. And I think that easily passes the test in Chan. Well, now, the IJ in this case, at least my reaction to it, was a little different from a flat-out 100 percent finding of incredibility and saying these events never occurred because I don't believe you. Instead, it strikes me that what the IJ said is, I can't tell what happened. And that's as far as the IJ went. Now, is there any significance in that? No, Your Honor. No? Okay. I think, I mean, I think when you actually look at the testimony and then you look at the IJ's finding, it comes together. Because if the Petitioner testified that he participated in the June 1991 elections, the Indian government, in a way to thwart the Akali Dal Party, then canceled those elections before they could happen and rounded up everyone who participated, but then later said that he was only arrested in March 1991, you know, it's the same sort of finding. All right. Thank you, Your Honor. Thank you very much. I'll give you a minute rather than 20 seconds. Well, it seems that the opposing counsel is relying on inconsistencies that occurred at his asylum office interview. Once again, we have no way of confirming what was said at that, what was said at his hearing. I'll continue, though, that that sub-argument was not made earlier. Oh, the sub-argument. Well, the Petitioner has always contested the fact that the alleged inconsistencies do not substantiate, do not substantiate an adverse credibility finding in this case. There's only one inconsistency. He testified consistently with his written declaration at his hearing. There is no, I don't think we can dispute that he testified consistently at his hearing. The only issue that was confronted, that he was confronted with at his hearing, he backtracked momentarily to say he did not participate in the boycott. When we look at the context of that testimony, it's clear that he said, I participated in the boycott before the election date, but I didn't participate in the boycott on the day of the election because I was arrested. He testified consistently with his written declaration that he was arrested because he participated in the boycott by supporting it, by supporting with a donation support and by spreading the word of the boycott. It's not a very long, it's not a very long transcript. It's very clear they testified consistently at his hearing. And so the primary issue is whether or not his testimony, his alleged statements at his asylum office interview can substantiate an adverse credibility finding. And as Petitioner previously argued before this Court, I do not believe that is the case. Thank you very much. The case is submitted, and we will go on to the Wynn case, Wynn v. Ashcroft. Thank you.
judges: B Fletcher, Leavy, Berzon